## THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM DECKARD, SR.                         :
1175 Temperance Lane                         :
Richboro, PA, Plaintiff                      : Case No. 2:17 – cv – 05182
                                             :
      v.                                  :
                                             :
ESTATE OF KATHLEEN EMORY,                    :
STEVEN EMORY, EXECUTOR                       :
c/o Thomas S. Harty, Esquire                 :
325 Chestnut Street - Suite 1116             :
Philadelphia, PA 19106                       :
                                             :
and                                          :
                                             :
STEVEN EMORY                                 :
c/o Thomas S. Harty, Esquire                 :
325 Chestnut Street - Suite 1116             :
Philadelphia, PA 19106                       :
                                             :
and                                          :
                                             :
CITIZENS BANK                                :
One Citizens Plaza                           :
Providence, Rhode Island 02903               :
                                             :
and                                          :
                                             :
WORLDPAY                                     :
600 Morgan Falls Road                        :
Atlanta, GA 30350                            :
                                             :
and                                          :
                                             :
PENN NATIONAL MUTUAL                         :
CASUALTY INSURANCE COMPANY                   :
P.O. Box 2361                                :
2 North Second Street                        :
Harrisburg, PA 17105-2361                    :
                                             :



**FILED**

DEC 3 1 2018

KATE BARKMAN, Clerk
By_____Dep. Clerk

and                                                    :
                                                       :
MICHAEL DANELLO, Agent                                 :
Penn National Mutual Casualty Insurance Co.            :
c/o Penn National Mutual Casualty Insurance            :
P.O Box 2361                                           :
2 North Second Street                                  :
Harrisburg, PA 17105-2361                              :
                                                       :
and                                                    :
                                                       :
ACLAIM ADJUSTMENT AGENCY INC                           :
7820 Castor Avenue                                     :
Philadelphia, PA 19152-3616                            :
                                                       :
and                                                    :
                                                       :
GEORGE PAGANO, Agent                                   :
c/o Acclaim Adjustment Agency Inc                      :
7820 Castor Avenue                                     :
Philadelphia, PA 19152-3616                            :
                                                       :
and                                                    :
                                                       :
DREW SALAMAN, ESQUIRE                                  :
650 Land Title Building                                :
100 South Broad Street                                 :
Philadelphia, PA 19110                                 :
                                                       :
and                                                    :
                                                       :
JANE'S and JOHN'S DOE 1 to 18                          :
names and addresses unknown                            :                    .
                                                       :
and                                                    :
                                                       :
Sole Proprietorship('s), Partnership('s),              :
Corporation('s), LLC('s ) and LLP('s) 1                :
through 15, names and addresses unknown,               :
Defendants.                                            :

## 2nd AMENDED COMPLAINT

**COMES NOW**, Plaintiff, William Deckard, Sr., who respectfully represents

to this Honorable Court the following:

### NATURE OF ACTION

1. This an is action for damages and injunctive relief brought by Plaintiff for

   violations of the Federal Racketeer Influenced and Corrupt Organizations Act, 18

   U.S.C. § 1961 *et seq* ("RICO") and applicable provisions of statutory and

   common law of the Commonwealth of Pennsylvania, *inter alia.*

### PARTIES

2. Plaintiff, William Deckard, Sr., is an adult individual who currently resides at

   1175 Temperance Lane, Richboro, PA 18954.

3. Defendant, <u>Estate of Kathleen Emory (aka/Kathleen Deckard):  Steven Emory,</u>

   <u>Executor,</u> is successor entity to Kathleen Deckard Emory, an adult individual who

   passed away August 1, 2016 at age 63, and shall hereinafter be referred to as

   Kathleen Emory; last known address of <u>Estate of Kathleen Emory</u>/Kathleen

   Deckard was 1220 Temperance Lane, Richboro, PA 18954 – it is believed, and

   therefore here averred, Executor Steven Emory accepts court related

   correspondence and service of documents through attorney Thomas S. Harty,

   Esquire at 325 Chestnut Street, Suite 1116, Philadelphia, PA 19106.

4. Defendant Steven Emory is an adult individual whose last known address was

   1220 Temperance Lane, Richboro, Bucks County, PA; being one and the same

adult individual who accepts court related correspondence and service of documents through attorney Thomas S. Harty, Esquire at 325 Chestnut Street, Suite 1116, Philadelphia, PA 19106.

5. <u>Steven Emory, Executor of Estate of Kathleen Emory</u> (see Paragraph 3, *supra*), and Defendant Steven Emory, shall hereinafter be referred to as Steven Emory.

6. Defendant <u>Citizens Bank</u> is a business entity with office at One Citizens Plaza, Providence, RI  02903.

7. Defendant <u>Worldpay</u> is a business entity with office at 600 Morgan Falls Road, Atlanta, GA  30350.

8. Defendant <u>Pennsylvania National Mutual Casualty Insurance Company</u> and <u>Penn National Security Insurance Company</u> are business entities with a P.O.Box address at P.O. Box 2361, Harrisburg, PA 17105-2361 and shall hereinafter be referred to as <u>Penn National</u>.

9. Defendant Michael Danello is an adult individual and Agent of Defendant <u>Penn National</u> with a P.O.Box address at P.O. Box 2361, Harrisburg, PA 17105-2361.

10. Defendant <u>Aclaim Adjustment, Inc.</u> is a business entity with address at 7820 Castor Avenue, Philadelphia, PA 19152 and shall hereinafter be referred to as <u>Aclaim</u>.

11. Defendant George Pagano is an adult individual and Agent of Defendant <u>Aclaim</u> with business address c/o <u>Aclaim Adjustments Agency, Inc.</u>, 7820 Castor Ave., Philadelphia, PA 19152.

12. Defendant Drew Salaman, Esquire is a Pennsylvania attorney with office at 650 Land Title Building, 100 South Broad Street, Philadelphia, PA 19110.

13. Defendant David Grunfeld, Esquire is a Pennsylvania Attorney with office at 200 South Broad Street, Floor 6, Philadelphia, PA 19102-3813.

14. Defendant Astor, Weiss, Kaplan & Mandel, LLP is a Pennsylvania law firm with office at 200 South Broad Street, Floor 6, Philadelphia, PA 19102-3813.

15. Defendant Adam Flager, Esquire is a Pennsylvania Attorney formerly with Astor, Weiss, Kaplan & Mandel, LLP (hereinafter Astor Weiss), with current business address 1210 Northbrook Drive, Suite 280, Trevose, PA 19053.

16. Defendant Linda Hee, Esquire is a Pennsylvania Attorney with office at 121 South Broad Street, Floor 20, Philadelphia, PA 19107.

17. Defendants Jane's and John's Doe 1 through 18's identities and addresses are currently unknown to Plaintiff.

18. Defendant's Sole Proprietorship('s), Partnership('s), Corporation('s), LLP('s) and/or LLC('s) 1 through 15's identities and addresses are currently unknown to Plaintiff.

19. Defendant's Doe and Defendant business entities are as yet unknown individuals, companies, partnerships, associations and/or entities who, upon information and belief, may bear some liability for Plaintiff's losses; the true names of said entities or Doe's referenced, *supra*, are at present unknown to Plaintiff, as stated, and Plaintiff therefore here sues such Defendant by such fictitious name, and will

amend the within Complaint to alert the Court to said Defendant's identity and role to date as such knowledge becomes available.

## JURISDICTION AND VENUE

20. Plaintiff asserts this Court has Jurisdiction over this matter on four (4) separate bases:  violation(s) of (A) the Interstate Commerce Clause (Article 1, § 8, Clause 3, U.S. Constitution); (B)/(C) the Mail and Wire Fraud Statutes (Title 18 U.S.C.A. §§ 1341 and 1343) and under the Federal RICO Act pursuant to 18 U.S.C. § 1961, *et seq*.  The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) in that these claims arise out of same common core of operative facts and form part of the same case and controversy as the federal claims.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that the conduct giving rise to this action occurred in this District, Defendants regularly conduct business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

22. Paragraph's 1 – 21 are hereby incorporated by reference as if fully set forth at length herein.

23. Plaintiff William Deckard, Sr. (DOB 9-1-1950) and Defendant Kathleen (Deckard) Emory (DOB 10-1-1952, DOD 8-1-2016) were brother and sister, born of parents Jesse and Gloria Deckard (Gloria Deckard:  DOB 1-17-1927; DOD 12-

15-2012).

24. From the 1950's Jesse Deckard owned <u>Jesse Deckard Overhead Doors</u>, a commercial garage door business operated from the family home at 10320 Haldeman Avenue, Philadelphia, PA 19116; the home's garage was the business' shop and from a home office, Mrs. Gloria Deckard maintained the business' accounts as the business' Bookkeeper.

25. In 1964, by <u>tenants by the entireties</u>, Jesse and Gloria Deckard purchased a ¼ acre vacant lot at U.S. Postal Service mailing address 9911 Northeast Avenue, Philadelphia, PA 19115.

26. From the property's purchase through Spring, 1966, Plaintiff and his father, Jesse Deckard, worked weekends, and after school (Plaintiff in 9th and 10th grades – Fall, 1964-Spring, 1966), and together built the lone 2,800 square foot rectangular warehouse type structure today located at 9911 Northeast Avenue, Philadelphia, PA 19115.

27. From Spring, 1966 Jesse Deckard operated <u>Jesse Deckard Overhead Doors</u> from 9911 Northeast Avenue; renaming the business <u>Jesse Deckard & Son Overhead Doors</u> in 1968 after Plaintiff graduated high school and began working full-time with his Father.

28. Jesse Deckard, passed away suddenly in August, 1974, leaving behind his wife, Gloria Deckard, and the couple's two adult children:  Plaintiff, William Deckard, Sr. (aged 23), and Plaintiff's younger sister, Defendant Kathleen (Deckard) Emory

(aged 21); Plaintiff's young wife, Robin, was about to give birth, and did so September 1, 1974 – Jesse Deckard never meeting his first grandson, William Deckard, Jr.

29. With his Mother continuing in role as Bookkeeper with home office at 10320 Haldeman Avenue, Philadelphia, PA 19115, Plaintiff successfully continued to operate the commercial overhead door business - Jesse Deckard & Son Overhead Doors - and its successor entity, Deckard Doors, until 2010.

30. Weeks after Jesse Deckard's death, 21 year old Kathleen Deckard (Emory), believing herself capable of becoming an actress, though never having sought formal acting training or experience, suddenly moved to California to pursue an acting career in Los Angeles – upon information and belief, Plaintiff here avers all Kathleen (Deckard) Emory's expenses in California, from 1974 through the late 1980's, were secretly paid by Gloria Deckard from, immediately, assets of Jesse Deckard & Son Overhead Doors, then from assets of Deckard Doors and Beer Hut. (Please see Paragraph's 33, *et seq., infra*).

31. In 1975, having been grieving the sudden loss of her husband in 1974, nearly immediately followed by the additionally sudden and stark absence of her needy, stubborn and headstrong daughter, Gloria Deckard outwardly exhibited to Plaintiff, and close relations, many of the text book signs of acute depression; said depression continuing implacably toward the approaching Summer of 1975.

32. In attempt to ease and cure his Mother's alarmingly increasing despondency,

Plaintiff, now a young businessman and new father operating his and his own

Father's business, <u>Jesse Deckard & Son Overhead Doors</u>, but no longer benefiting

from his Father's business knowledge and experience, conceived idea of how to

distract his Mother from her recent losses, and energize her, by the starting of an

additional, new and exciting retail business partnership among Mother and son.

33. Then 24 year old Plaintiff actually conceived two significant ideas

contemporaneously, the first enabling the second – the first idea was to alter the

historic practice of warehousing overhead doors by, instead of warehousing doors,

having all doors delivered directly to job sites just prior to the job

start/installation; the second idea was making more efficient use of the warehouse

at 9911 Northeast Avenue – the <u>Jesse Deckard & Son Overhead Doors</u> warehouse

– by ceasing overhead doors operation from the warehouse and reconfiguring the

building and opening and operating a Pennsylvania Beer Distributorship there.

34. In late Spring, 1975, Plaintiff altered <u>Jesse Deckard & Son Overhead Doors</u>

practice of warehousing overhead doors and storing tools/hardware at the 9911

Northeast Avenue building – the <u>Overhead Doors</u> business effectively vacating the

building.

35. Plaintiff relocated all hardware and tools not traveling daily on the <u>Jesse Deckard</u>

<u>& Son Overhead Doors</u> Super-Duty pickup truck to the family property's garage at

10320 Haldeman Avenue.

36. Plaintiff commenced sequestering investment funds for the new business start –

the retail beer store – and preparing the 9911 Northeast Avenue building for renovation.

37. In 1976, using $14,800 of the now 25 year old young father/Plaintiff's personal funds, Plaintiff purchased a Pennsylvania Liquor Control Board (PLCB) Beer Distributorship License, registering it in name of his Mother, Gloria Deckard.

38. Further, and continuing at Plaintiff's expense, Plaintiff arranged for an attorney to guide his Mother to:

(A) register a Fictitious Name (d/b/a - doing business as) in name Beer Hut;

(B) purchase and secure a Philadelphia Commercial Business License for Beer Hut; and

(C) file all Federal and Commonwealth of Pennsylvania documents gaining an EIN (Employee Identification Number) for the business Beer Hut.

39. While operating Deckard Doors by day from 1975 to 1978, in spare time and weekends, and at his own expense, Plaintiff commenced renovating the structure at 9911 Northeast Avenue into a facility capable of operating a Pennsylvania beer distributorship.

40. At his own expense, Plaintiff personally performed the construction work and all renovations – e.g., the purchase and installation of all equipment, refrigeration, shelving system(s), fork lift, office equipment, etc., to convert the 9911 Northeast Avenue property into the Beer Hut beer store.

41. In May, 1978 Plaintiff purchased approximately $20,000 in beer, soda, snacks,

and cigarettes, *inter alia*, opening Beer Hut at 9911 Northeast Avenue,
Philadelphia, PA in silent partnership with his Mother, Gloria Deckard; Gloria
Deckard performing Beer Hut bookkeeping/tax filings, at and from her home
office - 10320 Haldeman Avenue, Philadelphia, PA; Gloria Deckard being the
silent partner/sole proprietor for tax filing purposes and owner of record of the
PLCB Beer Distributorship License, with Plaintiff being the "Public Face" of
Beer Hut – as well as the (A) business' Financier, (B) Manager, (C) Operator, (D)
Inventory Purchaser and Stocker and (E) building Maintenance Man.

42. Plaintiff and his Mother, Gloria Deckard, then, successfully and *lawfully* ran their
Beer Hut silent partnership through November, 2012, all cash and credit receipts
delivered each evening to Beer Hut Bookkeeper Gloria Deckard's 10320
Haldeman Avenue home office by Beer Hut employees; records, bookkeeping and
tax filings, performed there, Gloria Deckard routinely traveling to Citizens Bank
to make cash deposits, *inter alia*.

43. At some point in the later 1980's, though then a "card carrying" member of the
Screen Actors Guild (SAG), Defendant Kathleen (Deckard) Emory, having failed
to secure any regular acting (SAG type) employment, left California and returned
to her Mother's 10320 Haldeman Avenue, Philadelphia home; marrying Steven
Emory at some later date.

44. Since returning from California in the 1980's, Defendant Kathleen Emory
regularly announced to family members two (2) things:  (A) that she accompanied

her elderly Mother – Gloria Deckard – to all doctor's/hospital appointments and (B) that she, Kathleen Emory, could identically sign her Mother's name, i.e., perfectly, or near perfectly, imitate her Mother's signature.

45. On December 4th, 2012, at age of 85, Mrs. Gloria Deckard, became incapacitated in coma; at her hospital bedside that date Plaintiff learned for the first time that Gloria Deckard had been suffering from cancer diagnosed in 2007, and later that day that the Beer Hut dedicated PA Lottery Citizen Bank account was OVERDRAWN by $3,200 (N.B.:  withdrawals from this account are to be done solely by agents of the PA Lottery (Please see Paragraph 46 (D), *infra*)).

46. On December 4, 2012, *inter alia*, Defendant Kathleen Emory astonished Plaintiff, and other relatives present, by asserting/offering:

(A) that, although Kathleen Emory accompanied her now 85 year old Mother, Gloria Deckard, to every medical/hospital appointment since the 1980's, Kathleen Emory did not know her Mother, Gloria Deckard, had been battling cancer since 2007;

(B) that Kathleen Emory was intimately aware of Beer Hut finances and activities and balances of Beer Hut bank accounts –  stunning Beer Hut silent partner/Plaintiff who until that moment believed Beer Hut finances had been confidentially maintained solely by Plaintiff's now comatose Beer Hut partner and Bookkeeper/Mother, Gloria Deckard;

(C)  that even though Beer Hut sales for November 1 through 30, 2012

exceeded $100,000, Kathleen Emory stated <u>Beer Hut</u> bank accounts had

insufficient funds for the routine December, 2012 monthly <u>Beer Hut</u> beer and

soda inventory order purchase(s); and

(D) that although Defendant, Kathleen Emory announced for the first time to

Plaintiff and family December 4th, 2012, that she, Kathleen Emory, was

intimately aware of all activities and balances of the three (3) <u>Citizens Bank</u>

Gloria Deckard <u>Beer Hut</u> bank accounts, Kathleen Emory also claimed she

was unaware of $3,200 inexplicably missing that date from the <u>Beer Hut</u> PA

Lottery dedicated bank account – a bank account dedicated for withdrawals

solely by PA Lottery Commission (Upon performance of an accounting of the

<u>Beer Hut</u> <u>Citizens Bank</u> dedicated PA Lottery Account – a much needed

accounting having been Court Ordered on a number of occasions by the

Commonwealth of Pennsylvania Orphan's Court for the County of

Philadelphia, but to date, having not yet been performed – Plaintiff assures

counsel and the Court multiple unlawful withdrawals from said account by

Defendants' Emorys will be revealed).

47. At 62 years old shortly after December 4th, 2012, and 34 years as <u>Beer Hut</u> Silent

Partner and Financier, Plaintiff performed his first ever <u>Beer Hut</u> banking visits

that month after directing the $3,500 of his personal funds be deposited by <u>Beer</u>

<u>Hut</u> employee Loretta Kelly (Gloria Deckard's sister) that date (12-4-2012) to

cover the shortfall in Gloria Deckard's <u>Citizen Bank</u> <u>Beer Hut</u> dedicated PA

Lottery Account.

48. Learning, at that $3,500 Bank Deposit, of Gloria Deckard's incapacity from Mrs. Deckard's sister Loretta Kelly, <u>Citizen's Bank</u> Manager Lisa Talley directed that Plaintiff open new <u>Beer Hut</u> bank accounts and obtain a new <u>Beer Hut</u> EIN in Plaintiff's name.

49. Plaintiff, in consultation with, and approval of, Defendants Emory, did as <u>Citizen Bank</u> manager Lisa Talley directed, opening two (2) new <u>Citizen Bank</u> accounts with his/Plaintiff's newly obtained EIN in name <u>The Beer Hut</u>, on December 10 and 13, 2012 (Exhibits A-1 (Exhibit 25 on DVD)) making Defendant Kathleen Emory a signor on the accounts.

50. Plaintiff contemporaneously alerted Defendant <u>Worldpay</u> of the new <u>Citizen Bank</u> <u>The Beer Hut</u> account for receiving <u>Worldpay</u> wire-direct deposits of credit and debit card retail <u>Beer Hut</u> purchases; and Defendant <u>Worldpay</u> did, appropriately, redirect said deposits from the <u>Beer Hut</u> Gloria Deckard EIN <u>Citizen Bank</u> account to the <u>The Beer Hut</u> William Deckard, Sr. EIN <u>Citizen Bank</u> account.

51. Gloria Deckard passed away December 15, 2012.

52. In a Will document submitted to the <u>Philadelphia Recorder of Wills</u>, Plaintiff is named as a 50% Beneficiary to the Residual Estate of <u>Estate of Gloria Deckard</u>, Plaintiff's Mother; Defendant Kathleen Emory is named Executrix.

**ALLEGATIONS RELATING TO DEFENDANT EMORYS'**
**TITLE 18 CHAPTER 96 §§ 1961-1968 ET SEQ.**
**RICO RACKETEERING ACTIVITIES AND CONSPIRACY**

53. Paragraph's 1 – 52 are hereby incorporated by reference as if fully set forth at length herein.

54. The following allegations are made upon Plaintiff's information and belief.

55. On December 29, 2012, Defendant Citizen Bank permitted putative Executrix to the Estate of Gloria Deckard, Defendant Kathleen Emory, to improperly open a Citizen Bank Estate Account without a lawfully registered Estate EIN (or routine presentation of IRS Form SS-4-2010 (Application for employer identification number) or Form 56-2011 (Notice concerning fiduciary relationship) (Exhibits A-4)).

56. Defendant Citizen Bank permitted Kathleen Emory to use and improperly register Decedent Gloria Deckard's EIN for the business Beer Hut as EIN for the Estate of Gloria Deckard, a newly opened Estate Citizens Bank account for use by Executrix.

57. In the months after the passing of Gloria Deckard, just shy of her 86th birthday, it was learned that Kathleen Emory had been covertly earning $300/week from 2010 to 2012 – on Beer Hut's payroll – without the knowledge of Plaintiff/silent partner and Beer Hut Manager/Financier, William Deckard, Sr.

58. From 2012, Defendant Kathleen Emory's blatant conduct of withdrawing thousands of dollars from Beer Hut and Gloria Deckard personal accounts, and never accounting for said funds, suggested Defendants Emory had been manipulating Gloria Deckard for years (Exhibit A-2 (Exhibit 16 on DVD)).

59. In 2015, documents produced in the Philadelphia Orphan's Court (180 DE of 2013
- In Re:  Estate of Gloria Deckard) by Defendants Emory revealed, since at least
2009, Steven Emory had been performing Beer Hut accounting:  preparing then
82 year old Gloria Deckard's tax forms and filings for the IRS and the
Pennsylvania and Philadelphia Departments of Revenue; it appearing Emorys had
unlimited access to Beer Hut and Gloria Deckard personal investments' records
from at least 2009 (Please see Gloria Deckard IRS Schedules "C" for 2009, 2010,
2011 and 2012 attached hereto (Exhibits A-3 (Exhibits 5, 6, 7 & 8 on DVD)).

60. Upon information and belief, gleaned from Emorys statements, acts, and
documents revealed/obtained from December 4th, 2012 (including 2015
documents referenced in paragraph 59, *supra*), Plaintiff has come to believe, and
here asserts, that since at least 2009, through the unique mother-daughter access
granted Defendant Kathleen Emory of her Mother by birth, that the Emorys,
collectively, had been unduly influencing, and **exploiting**, Gloria Deckard, by
gaining access to, and looting, Gloria Deckard's numerous personal investment
accounts, and assets of the business known as Beer Hut; an activity, to wit –
**exploiting** – expressly prohibited by the Act of the United States Congress – **The
Older Americans Act of 1965 (Amended Through P.L. 114-144, Enacted April
19, 2016)**.

61. Plaintiff believes and here asserts this **exploitation** of Gloria Deckard, *inter alia*,
enabled the Emory's, from at least 2009 to:

(A) daily steal, from physical possession of then 81 year old Gloria Deckard,

Beer Hut cash receipts delivered daily to Gloria Deckard's home (totaling in

the tens of thousands of dollars per year);

(B) cause Gloria Deckard to sign, or forge Gloria Deckard's signature on,

financial documents, e.g., and including, real estate deeds and Gloria Deckard

(personal) and Beer Hut bank checking account checks, deposit slips,

withdrawal slips, and documents relating to multiple Gloria Deckard personal

investment accounts (e.g. deposit, withdrawal, liquidation documents, etc.).

62. To the best of any related party's knowledge, information and belief, at no time

did Defendants Kathleen Emory or Steven Emory have employment or evince

visible means of support; four (4) putative businesses claimed at different times

by Defendant Steven Emory – Emory Digital Marketing, Network Direct,

Campbell Campaigns, Emory & Associates – upon good faith investigation by

Plaintiff since 2016, appear to perform no work and generate no income.

(Defendant's Steven Emory and Kathleen Emory hereinafter referred to as "the

Emorys" or "Emorys" or "Defendants Emory").

## ENTERPRISE

63. Paragraph's 1 – 62 are hereby incorporated by reference as if fully set forth at

length herein.

64. Plaintiff is a "person" within the meaning of 18 US.C. § 1964(c).

65. At all times relevant hereto, Plaintiff and Defendants were and are "persons"

within the meaning of 18 U.S.C. § 1961(3).

66. Plaintiff asserts evidence obtained after December 4th, 2012 revealed that Emorys conduct – the Enterprise – since at least 2009 through 2016 and 2018 (as relates to Defendant's Kathleen Emory (2016) and Steven Emory (to date (2018)), respectively (Kathleen Emory Date of Death (DOD) 8-1-2016)) relating to (A) the Enterprise' direction, management and control over Gloria Deckard's personal investment accounts and Beer Hut's business affairs, records and assets while Gloria Deckard lived (through 12-15-2012 (Gloria Deckard DOD)), to the (B) 2012 to 2015 Enterprise' (Defendants Emory) control of the Estate of Gloria Deckard by putative Executrix Defendant Kathleen Emory, under direction, guidance and influence of Defendant Steven Emory, to (C) the Enterprise manipulation of the impact(s) of action and/or inaction by the Philadelphia County Orphan's Court in relation thereto (180 DE of 2013 - In Re: Estate of Gloria Deckard) and actions by Enterprisees, Defendants Kathleen and Steven Emory, relating to a 2011 Tornado Damage to Real Estate Insurance Claim: structural damage to warehouse - Beer Hut building - at 9911 Northeast Avenue, owned by Plaintiff – NOT an asset of Estate of Gloria Deckard – all of said conduct constitute an Enterprise as defined by 18 U.S.C. § 1961(4).

67. The Enterprise is an organization which engages in, and whose activities affect, interstate commerce – in this case Pennsylvania resident Beer Hut's five (5) decades of bulk purchases from Pennsauken, New Jersey soft drink distribution

center(s), and Emorys – the Enterprise' – 2009 to 2015 liquidation of Gloria

Deckard's numerous investment accounts, annuities, insurance policies and other

assets that reside, and had resided until their unlawful liquidation by the

Enterprise (Defendants Emory), in a number of different states.

68. Defendants maintain an interest in and control the Enterprise and also conduct or

participate in the conduct of the Enterprise's affairs through a pattern of

racketeering, to wit, mail and wire fraud, *inter alia.*

69. Defendants' control and participation in the Enterprise is necessary for the

successful operation of Defendants' scheme.

70. In order to retain (A) money assets or proceeds from liquidation of Gloria

Deckard personal investments, annuities, insurance policies, etc., (B) money

assets of the business Beer Hut while Gloria Deckard lived (DOD 12-15-2012),

(C) money assets of the business Beer Hut after Gloria Deckard passes, (D) assets

due Plaintiff as Beneficiary to Estate of Gloria Deckard, (E) assets due Plaintiff as

successor owner of Beer Hut after passing of Gloria Deckard (having been silent

partner to Gloria Deckard since Plaintiff purchased Beer Hut PLCB License –

placing it in his Mother's, Gloria Deckard's, name – and obtained d/b/a/ name for

Beer Hut in 1976, *inter alia*, and opened said business in 1978) and (F) assets due

Plaintiff as owner of non-probate Real Property – the building at 9911 Northeast

Avenue and insurance claim made for tornado damages to same – Defendants

Emorys' Enterprise devised a system.

71. This Enterprise' "system", devised by the Emorys, enabled Emorys to (A)

    manipulate and exercise control over and exploit Gloria Deckard and Gloria

    Deckard's personal investment assets while Gloria Deckard lived, from at least

    2009 through December, 2012; while also during this 2009 to 2012 time period

    enabling Defendants' Emory to (B) manipulate and exert control over Gloria

    Deckard's *de facto* self-employment as Bookkeeper to the business <u>Beer Hut</u>,

    **enabling Defendants Emory to turn the, for thirty (30) years, lawfully**

    **operated business, <u>Beer Hut</u>, into Defendants' Emory personal embezzlement**

    **"cash cow"**, through Defendant Steven Emory's manipulation of the <u>Beer Hut</u>

    "Books" to under-report to taxing authorities from at least 2009 to 2015 <u>Beer Hut</u>

    sales permitting Emorys to "skim", or divert, said excess of "under-reported"

    sales receipts, in excess of tens of thousands of dollars per year, into venues

    and/or bank accounts under the Emorys' control.

72. Upon passing of Gloria Deckard, through presentation of a highly suspect Will

    instrument to the <u>Philadelphia County Recorder of Wills</u>, wherein said document

    Defendant Kathleen Emory is recorded as Executrix, Defendants' Emorys'

    Enterprise continued the looting of the personal investment assets of, now, the

    <u>Estate of Gloria Deckard</u>, as well as commencing a startling, outrageous,

    mendacious and disingenuous, disinformation campaign in February of 2013, that

    continues to date, regarding (A) the true genesis of the conception, start-up and 34

    year operation of <u>Beer Hut</u>, and (B) immediate prior 12 months history and status

of Gloria Deckard's numerous personal investments, in the Orphan's Court of

Philadelphia County, Pennsylvanina (180 DE of 2013 – In Re: Estate of Gloria

Deckard), wherein a significant diminution in value of said Estate has occurred,

along with destruction (frozen then broken heater piping causing 250,000 gallons

of Philadelphia Water Department water to flow through locked facility) of

Plaintiff's non-probate asset – the Beer Hut facility at 9911 Northeast Avenue, the

Beer Hut good name, inventory, clientele, business volume, *inter alia*.

73. Defendants' Emory, collectively, are members of the Enterprise.

74. As a result of Defendants' fraudulent schemes and racketeering activities Plaintiff

has been injured (A) in his business (Beer Hut), (B) in the unsettled by Plaintiff

insurance claim dollars for the 2011 tornado damage to 9911 Northeast Avenue

and (C) the near total, if not total, depletion in value of Plaintiff's 50% ownership

of the residual interest of Beneficiary to the Estate of Gloria Deckard, if ever there

is a finding that the Will document presented by Defendant Kathleen Emory is a

valid instrument, *inter alia*.

### PREDICATE ACTS

75. Paragraph's 1 – 74 are hereby incorporated by reference as if fully set forth at

length herein.

76. With respect to the activities alleged herein, each Defendant, and others not

named as defendants in this Complaint, in committing those activities within the

meaning of 18 U.S.C. § 2, have sought to aid and abet a scheme to violate 18

U.S.C. § 1962(c), to wit, each Defendant also agreed to the operation of the scheme or artifice to deprive Plaintiff, and <u>Estate of Gloria Deckard</u> (to which Plaintiff is 50% residual heir), of property interests; in furtherance of these agreements, each Defendant also agreed with each other, either directly or indirectly, to interfere with, obstruct, delay or affect commerce by attempting to obtain, and/or actually obtaining, property interests of Plaintiff and the <u>Estate</u> to which Defendants are/were not entitled.

77. With respect to the overt acts and activities alleged herein, each Defendant conspired with each other, and others not named as Defendants in this Complaint, to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

78. Each defendant also agreed and conspired with each other to participate, directly or indirectly, in the fraudulent scheme or artifice, in/of interfering with, obstructing, delaying or affecting commerce by attempting to obtain, and/or actually obtaining, property interest(s) of Plaintiff and the <u>Estate</u> to which Defendants are/were not entitled.

79. The numerous predicate acts of mail and wire fraud described herein are part of separate fraudulent schemes by Defendants designed to defraud Plaintiff, and the <u>Estate</u>, of money and property interest under false pretense;  Plaintiff is victim of these unlawful patterns of illegal activity and has suffered losses as a result of these activities .

80. In carrying out the overt acts and fraudulent schemes described above, Defendants

engaged in conduct in violation of federal laws, including 18 U.S.C. § 1341 and §

1343, 18 U.S.C. § 1341 and § 1346 and 18 U.S.C. § 1343 and 1346.

81. Section 1961(1) of RICO provides that "racketeering activity" is an act and

indictable under any of the following provisions of title 18 U.S.C. § 1341 (relating

to mail fraud), § 1343 (relating to wire fraud) § 1346 (relating to scheme or

artifice to defraud).

### VIOLATIONS OF 18 U.S.C. §§ 1341 AND 1343

82. Paragraph's 1 – 81 are hereby incorporated by reference as if fully set forth at

length herein.

83. For the purpose of executing and/or attempting to execute their scheme to defraud

and to obtain money by means of false pretenses, embezzlement and theft, *inter*

*alia*, Defendants, in violation of 18 U.S.C. § 1341, placed, *inter alia*, in post

offices, and/or in authorized repositories for mail and things to be sent or

delivered by the United States Postal Service, and received matters and things

therefrom, including but not limited to IRS tax notices, Forms 1099, 1040 and W-

2; specific examples though not limited solely thereto, of the means by which

documents containing false data were transmitted through the U.S. Postal Service

include (A) tax filings Defendants caused to be filed with the IRS,

Commonwealth of Pennsylvania's and Philadelphia's departments of tax revenue,

on exploited octogenarian Gloria Deckard's behalf, to hide Defendants – the

Enterprise' – embezzlement and theft of Gloria Deckard's assets, was on Forms'

1040 (and their appurtenant Schedules C) for 2009, 2010 and 2011 filed with IRS

and revenue forms filed with Pennsylvania and Philadelphia, in 2010, 2011 and

2012, and (B) all correspondence by, between and among, Defendants Emory,

Penn National, Michael Danello, Aclaim and George Pagano, said correspondence

occurring from 2011 through 2016, relating to a near $1Million tornado property

damage claim, and a $404,000 "settlement" – unauthorized by Plaintiff – for said

2011 insurance claim by Plaintiff, for damages done to the building and real

property Plaintiff owns at 9911 Northeast Avenue, Philadelphia, 19115 – both

Parts (A) and (B) herein, referencing two (2) distinct instances of "racketeering

activity" by the Enterprise – Defendants' Emory (within a 10 year period), in

violation of 18 U.S.C. § 1341, these are (A) Defendants', the Enterprise's, use of

mail, over at least the identified four (4) specific years, to provide the IRS,

Pennsylvania and Philadelphia with bogus Tax returns filed on behalf of Gloria

Deckard, and (B) a real property insurance damage claim settlement –

unauthorized by Plaintiff, the owner of the real property –  to be processed, are

examples, though not limited solely thereto, of the means by which false

representations to unlawfully gain Defendants – the Enterprise – assets to which

they were/are not entitled, *inter alia*, were routinely used by Defendants – the

Enterprise – in Violation of 18 U.S.C. § 1341.

84. For the purposes of executing and/or attempting to execute their scheme to

defraud and to obtain money by means of false pretenses, false representations or

promises, Defendants, in violation of 18 U.S.C. § 1343, transmitted and received by wire matter and things therefrom, including but not limited to voice information over the telephone, texts, e-correspondence and Faxes.

85. In those matters and things sent or delivered by the United States Postal Service, by wire and through other interstate electronic media, Defendants falsely and fraudulently misrepresented and fraudulently suppressed material facts in violation of 18 U.S.C. § 1341 and § 1343 including but not limited to the following:

- grossly under reported Beer Hut gross retail sales and profit data for 2009, 2010, 2011 and 2012 as said data was to be yearly reported to IRS and the revenue departments of the Commonwealth of Pennsylvania and the City of Philadelphia for revenue and taxing purposes; and grossly under-stated tornado damages data and costs for repairs as well as withheld Plaintiff's name as owner of the real property at 9911 Northeast Ave., Phila., PA 19115.

## PATTERN OF RACKETEERING ACTIVITY

86. Paragraph's 1 – 85 are hereby incorporated by reference as if fully set forth at length herein.

87. As set forth above, Defendants, have engaged in a "pattern of racketeering" activity as defined by § 1961(5) of RICO by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as

described above, within the past 10 years; each such act of racketeering activity was related, had similar purposes – illicitly gaining the Enterprise funds to which it was not entitled – involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including Plaintiff, and Estate of Gloria Deckard.

88. The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by Defendants, as described above, are related to each other, depict a significant period of continuous racketeering conduct continuing to date and amount to and pose a threat of continued racketeering activity and therefore constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5).

## COUNT 1

### Violations of 18 U.S.C. § 1962(c)

89. Paragraph's 1 – 88 are hereby re-alleged, and incorporated by reference, as if fully set forth at length herein.

90. The claim for relief arises under 18 U.S.C. § 1964(a) of RICO and seeks relief from Defendants' activities described herein for violations of 18 U.S.C. § 1962(c).

91. 18 U.S.C. § 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of activity or collection of an unlawful debt."

92. Plaintiff incorporates, as if fully set forth at length herein, the allegations that Defendants have engaged in a pattern of racketeering activity.

93. Through the pattern of racketeering activities outlined above, Defendants have conducted and participated in the affairs of the Enterprise described above.

94. With respect to their violations of § 1962(c) Defendants have acted at all times with malice toward Plaintiff.

**WHEREFORE**, Plaintiff, William Deckard, Sr., respectfully requests judgment in his favor against Defndants Steven Emory and the Estate of Kathleen Emory in an amount of not less than $50,000 including interest, delay damages, counsel fees and other costs this Court deems appropriate.

## COUNT II

### Violations of 18 USC 1962(d) by Conspiring to Violate § 1962(c)

95. Paragraph's 1 – 94 are hereby incorporated by reference as if fully set forth at length herein.

96. This claim for relief arises under 18 U.S.C. § 1964(a) of RICO and seeks relief from Defendants' activities described here in for violations of 18 U.S.C. § 1962(d) for their conspiring to violate 18 U.S.C. § 1962(c).

97. Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

98. Plaintiff incorporates, as if fully set forth at length herein, the allegations that

Defendants have engaged in a pattern of racketeering activity.

99. Absent Defendants' conspiracy and joint efforts, Defendants' scheme would not be successful.

100.    Defendants have violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), the object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the § 1962(c) Enterprise, described previously, through a pattern of racketeering activities.

101.    As demonstrated in detail above, Defendants have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy including systemic fraudulent practices designed to defraud Plaintiff of money and other property interests.

102.    Defendants pattern of fraudulent racketeering acts, stretching from at least 2009 through 2015, includes using the U.S. Postal Service, and electronic wire information transmission services, to transmit and cause to be filed false and fraudulent data/tax filings that grossly under report monies due taxing authorities (IRS, Pennsylvania and Philadelphia Departments of Revenue) to hide a multi-year scheme of theft and embezzlement by Defendants and the RICO Enterprise herein identified.

103.    As well, Defendants' pattern of fraudulent racketeering acts includes all correspondence and negotiations that resulted in generation of over $200,000 in proceeds from, putatively, an insurance claim on real property owned by Plaintiff

that was neither authorized by Plaintiff nor did such "settlement" involve Plaintiff

in any fashion, though at all times Plaintiff was owner of record of the insured real

estate – and although Plaintiff is the owner of the real property, and owner of any

and all proceeds from the 2011 tornado damage insurance claim, Plaintiff has

received $0.00 of said insurance proceeds (said "proceeds" from the "settlement"

discussed herein, however unauthorized by Plaintiff, is Plaintiff's possession, yet

said proceeds are in possession of a Philadelphia Orphan's Court Special Master

in charge of <u>Estate of Gloria Deckard</u> – said Special Master having jurisdiction

over <u>Estate</u> assets; insurance proceeds from Plaintiff's real property is NOT an

asset of Plaintiff's late Mother's Estate).

104.     The nature of the above described acts, material misrepresentations and

omissions in furtherance of the conspiracy, gives rise to an inference that

Defendant's not only agreed to the objective of an 18 U.S.C. § 1962(d) violation

of RICO by conspiring to violate 18 U.S.C. § 1962(c), but that these Defendant's

– the Enterprise – were aware that their ongoing fraudulent acts have been and are

part of an overall pattern of racketeering activity period.

105.     As a direct and proximate result of Defendants' – the Enterprise' – overt and

predicate acts in furtherance of violating 18 U.S.C. § 1962(d) – violation of RICO

by conspiring to violate 18 U.S.C. § 1962(c) – Plaintiff has been and continues to

be injured in his business and property as set forth in detail herein; pursuant to 18

U.S.C. § 1964(c) of RICO, Plaintiff is entitled therefore to bring this action to

protect his interest.

106.     Defendants have sought to, and have, engaged in the commission, and

continue to commit, overt acts and unlawful racketeering predicate acts that

generate income, sequester property or proceeds received by Defendants, to the

exclusion of Plaintiff, from such pattern of racketeering activity, including

multiple instances of mail and wire fraud violations of 18 U.S.C. §§ sections 1341

and 1343.

107.     Defendants' violations of the above federal laws, and the effects therof

detailed above. are continuing and will continue unless injunctive relief for

prohibiting the Defendants' illegal acts constituting a pattern of racketeering

activity is fashioned and imposed by the court.

108.     As a proximate result of Defendants' conduct as described above, Plaintiff

has been injured in his business and property.

**WHEREFORE**, Plaintiff, William Deckard, Sr., respectfully requests judgment

in his favor and against Defendants Steven Emory and the Estate of Kathleen

Emory in the amount of not less than $50,000, including interest, delay damages,

counsel fees and other costs this court deems appropriate.

### ALLEGATIONS AGAINST DEFENDANT CITIZENS BANK

### COUNT III - VIOLATIONS OF DEFENDANT CITIZENS BANK FIUCUARY DUTY OF EXERCISING ORDINARY CARE

109.     Paragraph's 1 – 105 are hereby incorporated by reference as if fully set forth

at length herein.

110.     Defendant <u>Citizens Bank</u> has an obligation to exercise a duty of ordinary

care when opening and overseeing administration of client accounts.

111.     Though Defendant <u>Citizens Bank</u> was repeatedly warned by Plaintiff that

Defendants Emory, from 2013, were unlawfully using Decedent Gloria Deckard's

EIN for the business <u>Beer Hut</u> in administering the banking account for the <u>Estate</u>

<u>of Gloria Deckard</u>, and that Defendants Emory were violating a standing 2013

Pennsylvania Orphan's Court Judge's Order to account for all funds involving the

business <u>Beer Hut</u>, Plaintiff asserts Defendant <u>Citizens Bank</u>, *inter alia*, took no

steps to learn whether the <u>Estate of Gloria Deckard</u> account, opened 12-29-2012

by Defendant Kathleen Emory and operated through 2017, was done pursuant to

U.S. Code of Federal Regulation(s).

112.     Defendant <u>Citizens Bank</u> did take affirmative steps to freeze Plaintiff's <u>The</u>

<u>Beer Hut</u> <u>Citizen Bank</u> accounts (said accounts opened 12-10 and 12-13 of 2012

pursuant to directive to Plaintiff from <u>Citizens Bank's</u> local Manager, Lisa Talley)

and subsequently authorized Defendant Kathleen Emory to cease all of Plaintiff's

funds in said accounts, said funds never to be accounted or returned to Plaintiff.

113.     Defendant <u>Citizens Bank</u> failure to exercise an ordinary duty of care, to

heed Plaintiff's many warnings regarding Defendants Emory, enabled Emorys to

covertly and unlawfully convert significant <u>Beer Hut</u> assets, and all <u>The Beer Hut</u>

assets, in <u>Citizens Bank</u> to the permanent possession of Defendants Emory –

assets to which Defendants Emory were and are not entitled, and, said assets have never been accounted.

**WHEREFORE**, Plaintiff, William Deckard, Sr.,  respectfully requests judgment in his favor and against Defendant <u>Citizens Bank</u> in the amount of not less than $50,000, including interest, delay damages, counsel fees and other costs this court deems appropriate.

<b>ALLEGATIONS AGAINST DEFENDANT WORLDPAY</b>

<b>COUNT IV - VIOLATIONS OF DEFENDANT WORLDPAY FIUCUARY DUTY<br>OF EXERCISING ORDINARY CARE</b>

114.    Paragraph's 1 – 109 are hereby incorporated by reference as if fully set forth at length herein.

115.    Defendant <u>Worldpay</u> has an obligation to exercise a duty of ordinary care when opening client accounts, *inter alia.*

116.    Ignoring Plaintiff's numerous telephone and email warnings through Spring/Summer, 2013 that Defendants Emory were unlawfully using a Decedent Gloria Deckards' <u>Beer Hut</u>  EIN in the administration of the banking accounts for the <u>Estate of Gloria Deckard</u> and <u>Beer Hut</u>, and that Defendants Emory were violating a standing 2013 Pennsylvania Orphan's Court Judge's Order to account for all funds involving the business <u>Beer Hut</u>, Plaintiff asserts Defendant <u>Worldpay</u>, *inter alia*, either transacted with Defendants Emory knowing Emorys' <u>Beer Hut</u> <u>Worldpay</u> and <u>Beer Hut</u> accounts were unlawfully using decedent Gloria Deckard's EIN, and not an <u>Estate</u> EIN created pursuant to Regulation(s), or

Emory's and <u>Worldpay</u> were using EIN of Plaintiff, William Deckard, Sr., without Plaintiff's knowledge.

117.    Defendant Worldpay's failure to exercise an ordinary duty of care, to heed Plaintiff's many warnings regarding Defendants Emory, enabled Emorys to covertly and unlawfully convert significant <u>Beer Hut</u> assets to permanent possession of Defendants Emory – assets to which Defendants Emory were and are not entitled.

**WHEREFORE**, Plaintiff, William Deckard, Sr.,  respectfully requests judgment in his favor and against Defendant <u>Citizens Bank</u> in the amount of not less than $50,000, including interest, delay damages, counsel fees and other costs this court deems appropriate.

### ALLEGATIONS AGAINST DEFENDANTS PENN NATIONAL, MICHAEL DANELLO, ACLAIM AND GEORGE PAGANO

### COUNT V - VIOLATIONS OF DEFENDANTS PENN NATIONAL, MICHAEL DANELLO, ACLAIM AND GEORGE PAGANO FIUCUARY DUTY OF EXERCISING ORDINARY CARE

118.    Paragraph's 1 – 117 are hereby incorporated by reference as if fully set forth at length herein.

119.    Plaintiff asserts that Defendants <u>Penn National</u>, Michael Danello, <u>Aclaim</u> and George Pagano, each had actual knowledge in 2014 of death of Gloria Deckard on December 15 of 2012, and that each also knew it was more likely than not that Defendants Emory were, with premeditation, attempting to defraud

the real property's co-owner, Plaintiff, of Plaintiff's 50% share of proceeds from any settlement of the 2011 tornado damage insurance claim for damages done to the 9911 Northeast Avenue property, said insurance claim for property damage having been filed with <u>Penn National</u> in 2011.

120.    By 2016, Plaintiff had learned to a near certainty that said tornado damage insurance claim was – unlawfully – "settled" among, at a minimum, Defendants Kathleen and Steven Emory and  Defendants <u>Penn National</u>, Michael Danello, <u>Aclaim</u> and George Pagano; said unlawful "settlement" involving only one of the co-owners of the real property known as 9911 Northeast Avenue, Philadelphia, PA 19115, that said co-owner being Defendant Kathleen Emory.

121.    Plaintiff believes, and here avers, that substantial correspondence occurred regarding said settlement, said correspondence involving Defendants Kathleen and Steven Emory and Defendants <u>Penn National</u>, Michael Danello, <u>Aclaim</u> and George Pagano.

122.    Plaintiff believes and here avers that all recorded communications involving said "settlement", e.g., letters, faxes, email, texts and phone calls, that each of these "communication" constitutes a separate violation of 18 U.S.C. §§ 1341 and 1343.

**WHEREFORE**, Plaintiff, William Deckard, Sr.,  respectfully requests judgment in his favor and against each Defendant Penn National, Michael Danello, Aclaim and George Pagano, jointly and severally, in the amount of not less than $50,000,

including interest, delay damages, counsel fees and other costs this court deems
appropriate.

## ALLEGATIONS AGAINST DEFENDANT DREW SALAMAN, ESQUIRE

## COUNT VI - VIOLATIONS OF DEFENDANT DREW SALAMAN, ESQUIRE FIUCUARY DUTY OF EXERCISING ORDINARY CARE AND LEGAL MALPRACTICE

123.    Paragraph's 1 – 122 are hereby incorporated by reference as if fully set forth
at length herein.

124.    On July 18, 2013, Defendant Drew Salaman, Esquire was appointed Special
Master in In re:  Estate of Gloria Deckard (180 DE of 2013) by the Orphan's
Court of Philadelphia – the Court's Decree reads, in pertinent part,  ". . . (1) The
Special Master (is) to oversee the operation of the Estate business entity The Beer
Hut with full authority to open the business oversee operations implement
standard operating procedures and to report to the court concerning the efficacy of
continued operation of the business.  (2) The special master shall be given
unfettered access and control to all keys, books and records, facilities and
employees.  Special Master shall be compensated from the Estate, upon order for
compensation, entered by this Court. . . (5) The Special Master shall consider that
the goal of the Estate is to maximize the value of the business for sale.  (6) The
Special Master shall report to the Court concerning progress in normalizing the
operation of this business and its prospects for sale within 30 days of the date of
this decree.  The Special Master is at liberty to report emergency situations to the

Court and, upon cause, may close the business, terminate employment of any

employee or bar any person from the premises. . ."

125.    Inter alia, Defendant Salaman failed to report to the Court Defendants

Emory theft of Beer Hut beer when the Court had ordered the business to be shut

and nothing removed in July, 2013.

126.    Additionally, however, Defendant Salaman failed his fiduciary duty to the

Estate of Gloria Deckard by failing to monitor Defendants Emory's wasting of

Beer Huts's assets through inattention, failure to maintain inventory (failure to

purchase inventory), failure to maintain business hours, negligence and outright

embezzlement (Exhibit A-4 (Deckard Banks Accts Analysis on DVD)); laying

groundwork for near total, if not total, depletion of assets of Plaintiff's.

**WHEREFORE**, Plaintiff, William Deckard, Sr.,  respectfully requests judgment

in his favor and against Defendant Drew Salaman, Esquire, in the amount of not

less than $50,000, including interest, delay damages, counsel fees and other costs

this court deems appropriate.

                              Respectfully submitted,

                              /S/ PETER BLUST, ESQUIRE
                              PETER BLUST, ESQUIRE
                              PA Attoney ID # 47072
                              Cooper Valley Village N-9
                              Edgewater Park, NJ 08010
                              (609) 309 2213
                              peterfblust@gmail.com

DATE: 12-31-2018