# **EXHIBIT B**

**WORLDPAY US, INC.**
**TERMS AND CONDITIONS OF CUSTOMER PROCESSING AGREEMENT**

Thank you for selecting us for your payment processing needs. These Terms and Conditions (the "Terms and Conditions"), along with the Customer Processing Agreement ("Customer Processing Agreement") that you have submitted, contain the terms and conditions under which RBS Citizens, N.A., a federally chartered financial institution having its principal office at 1 Citizens Plaza, Providence, Rhode Island 02903 ("Bank") and WorldPay US, Inc., a Georgia corporation with offices at 600 Morgan Falls Road, Atlanta, Georgia 30350 ("WorldPay") shall provide services and products to you.

**SECTION 1.  DEFINITIONS.**
The following capitalized terms shall have the meanings set forth below when used in this Agreement:
"ACH" shall mean the electronic network for financial transactions in the United States known as the Automated Clearing House.
"Agreement" shall mean the Customer Processing Agreement, along with these Terms and Conditions and all related schedules, exhibits, addenda, or amendments.
"Authorized Card Transaction" shall mean a sales transaction involving a Transaction Card, provided the transaction has been authorized by the Transaction Card issuer as contemplated by this Agreement.
"Chargeback" shall have the meaning set forth in Section 6.2.
"Customer" shall mean the entity (or individual, if a sole proprietorship) that executes and submits the Customer Processing Agreement.
"Deposit/Chargeback Account" shall mean one or more U.S. banking accounts established and owned by Customer to be utilized by the Bank for the settlement to Customer of transactions involving Transaction Cards processed under this Agreement and the payment by Customer of Processing Charges, Chargebacks, and other amounts payable under this Agreement. The Deposit/Chargeback Account shall be maintained by Customer in accordance with Section 4.4. Customer acknowledges that WorldPay and the Bank may credit or debit (by ACH or other electronic means) amounts payable to or by Customer under this Agreement to or from any bank accounts designated by Customer for use under this Agreement, regardless of whether designated for settlement, billing, chargeback, etc.
"Discover" shall mean Discover Financial Services, LLC.
"MasterCard" shall mean MasterCard International, Inc.
"Non Visa/MasterCard/Discover Card" shall mean Transaction Cards issued by credit or debit card networks other than Visa, MasterCard, or Discover.
"Payment Network" or "Payment Networks" shall mean Visa, MasterCard, Discover, and any credit or debit card network issuing Transaction Cards.
"Processing Charges" shall mean the authorization, processing, settlement, and other fees or amounts charged by WorldPay and the Bank, or passed through (from the Payment Networks or other third parties) to Customer by WorldPay and the Bank, as set forth in this Agreement.
"Reserve Fund" shall mean a non-segregated and non-interest bearing account established by the Bank or WorldPay in accordance with Section 6.3, 6.4, or 10.4 to ensure payment of Chargebacks, fines and penalties assessed by the Payment Networks, Processing Charges, and other amounts due from Customer to WorldPay or the Bank under this Agreement.
"Rules" shall mean the operating rules and regulations of the Bank, WorldPay, Visa, MasterCard, Discover and any other applicable Payment Network, as in effect from time to time.
"Transaction Card" or "Transaction Cards" shall mean a Visa/MasterCard/Discover credit or debit card, travel and entertainment card, or other credit or debit card shown as a qualified card on lists furnished to Customer by the Bank or WorldPay from time to time.
"Visa" shall mean Visa USA, Inc. or VISA International, Inc.
"Visa/MasterCard/Discover" shall mean Visa, MasterCard, and Discover, collectively.

**SECTION 2.  RULES AND REGULATIONS; LAWS.**
Customer shall comply with all of the Rules and all federal, state, local or other laws, rules and regulations applicable to Customer. Customer shall not require cardholders to provide personal information such as home or business telephone number, home or business address, or any form of identification (such as a driver's license) as a condition for accepting a Transaction Card, unless permitted by the Rules. In the event Customer fails to comply with this Section 2, Customer will be liable for all fees, penalties and fines imposed by the Payment Networks or any governmental authority, and Customer will indemnify and hold harmless the Bank and WorldPay from and against any and all claims, demands, damages, judgments, fines, penalties, costs and expenses suffered or

incurred by the Bank and WorldPay as a result of such failure. Customer hereby delegates to WorldPay the selection of routing preferences related to the processing of all debit cards.

**SECTION 3.  SERVICES.**
**3.1    Services Provided by WorldPay.**  WorldPay shall provide authorization, electronic draft capture, submission of transactions to Payment Networks, and additional related services for Transaction Card sales originated by Customer as set forth in this Agreement.
**3.2    Services Provided by the Bank.**  The Bank shall settle all Visa/MasterCard/Discover (and certain other credit and debit cards) transactions processed by WorldPay hereunder for Customer in accordance with this Agreement and the Rules.

**SECTION 4.  PROCESSING AND PAYMENTS.**
**4.1    Submission of Transactions.**  Customer shall transmit to WorldPay information representing Customer sales to be authorized and settled (paid) by Transaction Cards. Customer shall transmit transactions to WorldPay at the time of each sale or as soon thereafter as practicable. It is understood that the time of receipt of transaction information by WorldPay will affect the timing of settlement and payment to Customer. If Customer fails to submit transactions on a timely basis as provided herein and as provided in the Rules, transactions may be subject to increased interchange fees, and Customer shall pay such fees.
**4.2    Payment of Visa/MasterCard/Discover.**  Customer hereby designates the Bank and WorldPay as its agents to receive all payments pertaining to Customer's Visa/MasterCard/Discover transactions. All payments required to be made to Customer under this Agreement for Visa/MasterCard/Discover transactions shall be made by the Bank to the Deposit/Chargeback Account, via electronic funds transfer by ACH (or other electronic means) or by wire transfer, at the Bank's option, as soon as practicable after the Bank's receipt of such funds from the relevant Payment Network.
**4.3    Payment of Non Visa/MasterCard/Discover Cards.**  Customer hereby designates the Bank and WorldPay as its agents to receive all payments pertaining to Customer's Non Visa/MasterCard/Discover Card transactions except when WorldPay's role is to provide authorization only services. All payments required to be made to Customer under this Agreement for Non Visa/MasterCard/Discover Cards shall be made by the Bank to the Deposit/Chargeback Account, via electronic funds transfer by ACH (or other electronic means) or by wire transfer, at the Bank's option, as soon as practicable after the Bank's receipt of such funds from the relevant Payment Network. WorldPay and the Bank shall have no liability for any failure by a Payment Network to settle any transaction processed under this Agreement.
**4.4    Customer Deposit/Chargeback Account.**  Customer hereby certifies that the Deposit/Chargeback Account information provided by Customer to WorldPay is correct and agrees that the Bank and WorldPay are authorized to debit and credit any such Deposit/Chargeback Account for the settlement of transactions involving Transaction Cards and the payment by Customer of Processing Charges, Chargebacks, and other amounts payable pursuant to this Agreement (whether arising during or after termination of this Agreement). Customer agrees that it shall maintain and shall not close or restrict the Bank's and WorldPay's access to the Deposit/Chargeback Account during the term of this Agreement and thereafter, until all amounts owed under this Agreement are paid in full.
**4.5    Customer Transactions.**  Customer may not present for processing, directly or indirectly, any transaction which was not originated as a result of an act between the cardholder and Customer or which is not an Authorized Card Transaction. If authorization for a transaction is denied, Customer shall not complete the transaction. Customer may contact the authorization center by magnetic stripe reading terminal, telephone or any other means acceptable to the Bank and WorldPay. For all transactions, Customer shall provide the cardholder with a transaction receipt, which shall evidence purchases made by a cardholder or credits to a cardholder's account, as the case may be, in accordance with the Rules. Calculation, collection and remittance of sales tax are the sole responsibility of the Customer.
**4.6    Telephone, Internet and Mail Orders.**  If Customer is authorized by WorldPay and the Bank to accept telephone, Internet or mail orders, Customer shall comply with all requirements of this Section 4.6, and with respect to Internet orders over an Internet web site, Customer shall also comply with all Rules regarding electronic commerce conducted through web sites. Authorization for each such transaction, regardless of the face amount, must be obtained. Customer shall obtain the expiration date of the Transaction Card as part of the authorization inquiry and utilize address verification where possible. Customer assumes all responsibility for identification of the cardholder and the validity of the Transaction Card information. For transactions where merchandise is to be shipped or delivered to the cardholder, the shipping date shall not be more than seven calendar days after the authorization is obtained, and any shipping and handling costs not included in the authorization amount must not exceed

15101v4                                                                                                                     1

15% of the amount authorized. An installment payment option may be offered if all items are clearly disclosed, each installment is authorized, the first installment is not submitted for settlement until the merchandise is shipped, and subsequent installments are submitted no more frequently than monthly. Under no circumstances may Customer require that a cardholder complete a postcard or other document, which displays the cardholder's account data in plain view when mailed.

**4.7    Payment Card Industry Data Security.** Customer acknowledges and agrees that it is required to and shall abide by all standards, guidelines, practices or procedures recommended or required by the applicable Payment Networks with respect to data security or protection of cardholder data, as such may be amended from time to time (collectively "Data Security Guidelines"), including, without limitation, Payment Card Industry ("PCI") Data Security Standards ("PCI-DSS"), PIN Entry Device Standards ("PED"), and Payment Application-Data Security Standards ("PA-DSS"). Currently, the PCI-DSS guidelines require Customer (a) to observe, among other things, standards of due care with regard to the protection of sensitive cardholder information; and (b) to insure that the point of sale equipment and applicable software used by Customer comply with PCI-DSS guidelines. Currently, the PCI-DSS guidelines are based on a list of twelve basic security requirements with which all payment system constituents (including Customer) need to comply. The requirements are:

(1)   Install and maintain a firewall configuration to protect cardholder data;
(2)   Do not use vendor-supplied defaults for system passwords and other security parameters;
(3)   Protect stored cardholder data;
(4)   Encrypt transmission of cardholder data across open, public networks;
(5)   Use and regularly update anti-virus software;
(6)   Develop and maintain secure systems and applications;
(7)   Restrict access to cardholder data by business need-to-know;
(8)   Assign a unique ID to each person with computer access;
(9)   Restrict physical access to cardholder data;
(10)  Track and monitor all access to network resources and cardholder data;
(11)  Regularly test security systems and processes; and
(12)  Maintain a policy that addresses information security.

Customer must also notify WorldPay of all third parties who have access to cardholder data on behalf of Customer (i.e., store, process or otherwise transmit cardholder data). Customer acknowledges such third parties are required by the Payment Networks to be registered, and Customer shall cooperate with WorldPay in completing such registration and be responsible for all fees imposed by the Payment Networks in connection therewith. If Customer knows or suspects a security breach, Customer shall notify WorldPay immediately. Customer shall then go through its security program to identify and remediate the source of the suspected compromise. If a Payment Network requires Customer to submit to an audit in connection with a breach or suspected compromise of cardholder data or any other breach of Data Security Guidelines, Customer shall cooperate with such audit and shall be responsible for the cost of the audit. Customer acknowledges that if a Payment Network determines that Customer was responsible for a disclosure of cardholder transaction information or other breach of Data Security Guidelines, WorldPay and the Bank may be subject to charges imposed by the Payment Network. Further, if Customer is responsible for a disclosure of cardholder transaction information or other breach of Data Security Guidelines, WorldPay, the Bank, and Customer may be subject to third party claims. Customer shall indemnify and hold WorldPay and the Bank harmless from and against any and all claims, demands, damages, judgments, fines, penalties, costs and expenses, including without limitation, Chargebacks, suffered or incurred by the Bank and WorldPay as a result of Customer's non-compliance with the Data Security Guidelines, Customer's failure to maintain equipment and software that complies with Data Security Guidelines, or any other data compromise for which a Payment Network or a court with competent jurisdiction determines that Customer is responsible. Customer shall notify WorldPay and the Bank prior to changing its payment application software (including any change in versions of such software). Customer shall provide the new payment application name and version number prior to submitting any transactions to WorldPay utilizing the new payment application (including new versions).

**4.8    Retention of Documents.** The Bank and WorldPay may examine and verify at reasonable times all records of Customer pertaining to card transactions processed by WorldPay hereunder, and, subject to compliance with the Rules and applicable law, Customer shall preserve such records, including transaction receipts, credit vouchers and all other written evidence of such transactions, for a period of at least two years from the date of the processing of the transaction.

**4.9    Changes in Rules.** If there is a change in any Rule, applicable law or the regulation of a pertinent governmental agency, which change would make a provision of this Agreement in conflict with such Rule, law or regulation, the Bank or WorldPay may unilaterally amend this Agreement, upon written notice to Customer and the other party, to conform and/or be compatible with such changed Rule, law or regulation.

**SECTION 5.  PRICING.**

**5.1    Pricing.** As consideration for the services set forth in Section 3 hereof, Customer shall pay the Bank, or WorldPay on behalf of Bank, Processing Charges in the manner and pursuant to the accompanying Customer Processing Agreement. If Customer has selected Cost Plus Pricing, Customer acknowledges that such costs includes all standard fees and charges of the Payment Networks (without regard to any volume discounts) for credit or debit card transactions or other electronic payment transactions processed pursuant to this Agreement, including, without limitation, interchange, assessment, authorization, risk, transmission, FANF and all other fees.

**5.2    Deduction of Processing Charges.** Processing Charges, Chargebacks, and all other amounts for which Customer is responsible pursuant to this Agreement shall be deducted from amounts due to Customer under this Agreement or such amounts shall be deducted from Customer's Deposit/Chargeback Account, at the option of the Bank and WorldPay. Customer hereby authorizes the Bank or WorldPay to debit Customer's Deposit/Chargeback Account by ACH (or other electronic means) or by wire transfer for amounts due hereunder.

**5.3    Discount Rates.** Tiered discount and surcharge rates (as determined by the Bank and WorldPay from time to time) shall apply to each Visa/MasterCard/Discover transaction processed hereunder. Tiered rate transaction group designations include, but are not limited to, factors such as: voice authorization instead of electronic authorization; Transaction Card is keyed instead of swiped; there is more than one authorization per transaction; transmit/settle for processing greater than 24 hours from the authorized time but less than 48 hours from authorization time; transactions not settled within 48 hours of authorization; and Visa/MasterCard/Discover Business Card transactions. Decisions as to which tier a particular transaction type is to be placed is subject to change.

**5.4    Estimated Averages.** The Processing Charges are based upon assumptions associated with the anticipated volume, and average transaction size (as shown on this Agreement), as well as Customer's method of doing business. If the actual volume or average transaction size is materially different from the anticipated amounts as shown on the application, or if Customer significantly alters its method of doing business (i.e., the nature and type of business conducted by Customer), WorldPay or the Bank may adjust Customer's Processing Charges without prior notice. Any such adjustments shall be in addition to, and not in lieu of, any other remedies available to WorldPay or the Bank hereunder.

**5.5    Additional Expenses.** To the extent that WorldPay or the Bank provides services to Customer in connection with issues with the Payment Networks, including, without limitation, services related to excessive Chargebacks, excessive fraud, data security or PCI issues, allegations of failure to comply with the Rules, assistance with registration or other actions required or appropriate in order for Customer to comply with the Rules, responding to requests or communications from the Payment Networks, or similar services, such services shall be provided by WorldPay at WorldPay's or the Bank's, as applicable, then current standard hourly rate. To the extent that Customer is classified by the Payment Networks in a "high risk" or similar category, additional fees may apply. WorldPay shall notify Customer of such classification, as well as the related additional fees. If the additional fees related to such high risk classification are unacceptable to Customer, Customer may terminate the Agreement without penalty by notifying WorldPay in writing of such termination, provided such notice is sent within 15 days following the date of the fee notice.

**5.6    Payment for Equipment; Gateway Software.** Customer shall be responsible for obtaining, installing and maintaining all point of sale or similar equipment required in order to transmit transactions to WorldPay. To the extent that Customer purchases equipment from WorldPay, such equipment may be returned within 30 days of the original shipment date, provided the equipment is in an unused condition and is enclosed in its original packaging, with all accessories, and over boxed to protect the original packaging. A $25 restocking fee and shipping costs will apply. Returned devices must be in full working order, or the device will be charged to Customer at the full retail price. Exchanges and replacements of equipment under any of WorldPay's equipment replacement programs are for like devices (same model numbers and memory capacity) and may be new or refurbished. To the extent that Customer utilizes any gateway or similar software, services, and/or hardware to connect to WorldPay's system, Customer understands that a separate agreement may be required with the third party provider in order to obtain

such software, services or hardware, and additional fees may be charged by the third party provider in addition to the fees charged by WorldPay and the Bank as shown on the Customer Processing Agreement. Customer shall be responsible for any claims, demands or increased fees (including interchange downgrade expenses) that result from Customer's (a) use of Value Added Reseller (VAR) or point of sale systems that do not use the WorldPay authorization network; (b) failure to maintain the most current version of WorldPay certified software; or (c) misuse of WorldPay certified software. Customer shall also be responsible for all telephone equipment and line charges, utility costs and other communication charges for equipment required pursuant to this Section. Customer understands and agrees that equipment and point of sale terminals which bear the WorldPay name are compatible only with WorldPay's proprietary processing system and can not be reprogrammed to permit transactions to be processed by any other processor or competitor, either during or after termination of this Agreement.

**SECTION 6. CHARGEBACKS.**

**6.1     Retrieval Requests.** Either the Bank or WorldPay may, from time to time, request an original or copy of a transaction receipt or credit voucher (a "Retrieval Request"). Customer shall respond to Retrieval Requests in accordance with the Rules and shall provide WorldPay and the Bank with originals or copies of such transaction receipts or credit vouchers within ten business days of the Retrieval Request.

**6.2     Chargebacks.** Customer shall pay the Bank (as set forth in Section 6.5 below) the face amount of any card transaction processed by WorldPay pursuant to this Agreement whenever any card transaction is reversed in accordance with the Rules or any applicable consumer protection statute (a "Chargeback"), including by way of example, but not limited to, the following:

(a)   Goods are returned, whether or not a credit voucher is delivered to the Bank;
(b)   The sale transaction was not specifically authorized as set forth in Section 4 above;
(c)   Any card transaction is alleged by the cardholder to have been executed improperly or without authority;
(d)   The documentation prepared by Customer evidencing the draft is illegible or incomplete;
(e)   The cardholder disputes the sale, quality or delivery of goods or the performance or quality of services covered by the draft;
(f)   Cardholder asserts against the Transaction Card issuer or the Bank any claim, dispute, defense, offset, or counterclaim which cardholder may have as a buyer against Customer, in which case the Bank or WorldPay shall not have any obligation to inquire into or determine the validity of any such claim, dispute, defense, offset, or counterclaim);
(g)   The extension of credit for goods sold or services performed was in violation of law, rules or regulations of any government agency, federal, state, local, or otherwise, or in violation of this Agreement;
(h)   The draft lacks a Transaction Card imprint (if required) and cardholder's signature (if required);
(i)   Cardholder claims the dollar amount was altered after the draft was completed;
(j)   Two or more drafts were prepared by Customer for the same card transaction (except as otherwise permitted in Section 7.3);
(k)   The Transaction Card had expired before the transaction date or the sales transaction arises from the use of a counterfeit or otherwise ineffective Transaction Card;
(l)   The embossed name on the Transaction Card differs from or is dissimilar to the name signed on the signature panel of the Transaction Card of the draft or the signature on the signature panel of the Transaction Card differs from or is dissimilar to the signature on the draft;
(m)   The information contained in the draft was received by WorldPay more than 30 business days after the transaction date showing thereon;
(n)   The draft is a duplicate of one previously processed or includes a charge previously paid by the cardholder;
(o)   The draft is fraudulent or the sales transaction was not a bona fide transaction in Customer's ordinary course of business;
(p)   The Transaction Card issuer has information that fraud occurred at the time of the transaction, whether or not such transaction was properly authorized by the Transaction Card issuer, and the cardholder neither participated in nor authorized the transaction; and
(q)   In any other situation where a draft was executed or depository credit given in circumstances constituting a breach of any duty, term, condition, representation, or warranty by Customer hereunder, or where any action or lack of action by Customer in violation of the Rules has resulted in the draft being charged back to the Bank by an issuing member of Visa/MasterCard/Discover pursuant to the Rules or the draft is charged back to the Bank for any other reason. Additions and deletions to this list may occur as the Rules change.

**6.3     Reserve Fund.** If required by the Bank or WorldPay at the time this Agreement is executed, Customer shall establish with the Bank a Reserve Fund in the amount so required. Further, at any time during the term of this Agreement, either the Bank or WorldPay may determine in its commercially reasonable discretion that it is necessary to establish, replenish or increase a Reserve Fund, in which case, the Bank or WorldPay shall have the right, after three days written notice to Customer, to establish, replenish or increase the Reserve Fund by debiting Customer's daily collected transactions by the amount necessary, in Bank's and WorldPay's commercially reasonable discretion, to adequately establish, replenish or increase the Reserve Fund. If such collections are inadequate in the Bank's and WorldPay's commercially reasonable discretion to adequately establish, replenish or increase the Reserve Fund in a timely manner, the Bank or WorldPay may deduct (by ACH debit or other electronic means) from the Customer's Deposit/Chargeback Account additional sums as necessary, in their commercially reasonable discretion, to establish, replenish or increase the Reserve Fund. In accordance with Section 10.4, upon termination of this Agreement, the Bank or WorldPay may continue to hold in the Reserve Fund up to the estimated aggregate dollar amount of Customer's Chargebacks and other obligations and liabilities that the Bank and WorldPay anticipate may become due subsequent to termination and any excess shall be refunded to Customer. Customer hereby grants the Bank and WorldPay a first priority security interest in the Reserve Fund.

**6.4     Temporary Holdback.** In addition to any of the other rights granted to the Bank and WorldPay in this Section 6, in the event that the Bank and WorldPay, at any time during the term of this Agreement, determine in their commercially reasonable discretion that it may be prudent or necessary to do so as a result of any unusual or suspicious activity involving Customer's account, a cardholder's account, or otherwise, including, without limitation, money laundering, invalid sales transactions, counterfeit transactions, altered or duplicate transactions, activity related to a suspected compromise of cardholder data or other breach of Data Security Guidelines, or Customer is identified by a Payment Network as experiencing excessive Chargebacks, the Bank or WorldPay on behalf of the Bank may, without notice, hold funds otherwise due Customer in the Bank's name and in a non-segregated and non-interest bearing account for such period as the Bank or WorldPay, in its commercially reasonable discretion, deems necessary, to reimburse the Bank and WorldPay for Chargebacks and credits issued by Customer in respect of such activity, plus other costs or liabilities reasonably anticipated to be due from Customer to WorldPay or the Bank under the terms of this Agreement as a result of such activity. To the extent (i) the investigation conducted by WorldPay and Bank with respect to the unusual or suspicious activity determines that such activity is reasonably likely to result in amounts being due from Customer to WorldPay or the Bank, and (ii) WorldPay or the Bank requires the establishment, replenishment or increase of a Reserve Fund in connection therewith, then the funds held pursuant to this Section 6.4 may be used to fund such Reserve Fund.

**6.5     Chargeback Reimbursements.** Customer shall reimburse the Bank for the face amount of any card transaction processed by WorldPay in the event of a Chargeback and pay a handling fee for each Chargeback in the amount set forth on the accompanying Customer Processing Agreement. Customer hereby authorizes the Bank or WorldPay to debit without notice Chargebacks and Chargeback handling fees from Customer's daily collected transactions, and if such collections are inadequate to reimburse the Bank, at the Bank's election, to deduct such amounts by ACH debit or other means from the Deposit/Chargeback Account or Reserve Fund. Customer acknowledges that the Payment Networks impose fines in the event Customer experiences excessive Chargebacks as described in the Rules. Customer shall reimburse and indemnify WorldPay and the Bank for any fines imposed by the Payment Networks as a result of Customer's excessive Chargebacks.

**6.6     Maximum Period.** Customer will be subject to Chargebacks on Transaction Card sales for the period specified by the Rules.

**6.7     Notices of Chargebacks.** The Bank and WorldPay shall deliver all Chargeback documentation to Customer promptly as directed by Customer as to media and location. Customer is responsible for verifying its deposits and statements for Chargebacks and Chargeback handling fees. Customer understands that it must respond to all Chargebacks within ten calendar days after notice of the Chargeback. Customer understands that the failure to respond within each ten day period shall constitute a waiver by Customer of its ability to question or reverse a Chargeback and Customer shall be solely responsible if it fails to timely provide information with respect to a Chargeback.

**6.8     Successor Responsibility.** Customer is responsible for providing written notice to the Bank and WorldPay of any change in the ownership status or composition of Customer. Customer and any successor or new owner of Customer shall be jointly and severally obligated to pay for all Chargebacks, Processing Charges, or other amounts resulting from Transaction Card sales originated under this Agreement, unless the original

Customer or successor thereof is released in writing by the Bank and WorldPay. This obligation shall survive the termination of this Agreement.

**SECTION 7. ADDITIONAL CUSTOMER RESPONSIBILITIES.**

**7.1 Honoring Cards.** Customer shall honor any valid Transaction Card that Customer has elected to accept hereunder, which is properly presented for use. Customer shall not discriminate against cardholders seeking to make purchases with a Transaction Card. Except as permitted by the Rules and applicable law, Customer shall not require a minimum transaction amount below which Customer will refuse to honor an otherwise valid Transaction Card. Customer shall adequately display promotional materials to inform the public that Transaction Cards will be honored by Customer as required by the Rules. Customer shall not require a cardholder, as a condition for honoring a Transaction Card, to sign a statement waiving the cardholder's right to dispute the transaction with the issuer.

**7.2 Sales Transactions.** Except for transactions originated by telephone, mail order or through the Internet, Customer shall:
(a) include on a single sales draft all goods and services purchased in the same transaction and enter a description of the goods or services sold and the price thereof (including any applicable taxes) in detail sufficient to identify the transaction;
(b) enter on the sales draft the date of the transaction;
(c) obtain the signature of the cardholder on the sales draft, if required by the Rules;
(d) compare the signature on the sales draft with the signature on the Transaction Card presented to ascertain that they appear to be the same;
(e) check the effective date, if any and expiration date on the Transaction Card;
(f) examine any security features on the Transaction Card;
(g) imprint on the sales draft the embossed data from the Transaction Card and from the Customer plate on the imprinter, if required by the Rules;
(h) deliver to the cardholder at the time of delivery of goods or performance of service a true and complete copy of the sales draft or credit voucher; and
(i) ensure that each cardholder receipt contains the following information:
  (i) the transaction payment type, e.g. Visa, MasterCard, etc.;
  (ii) Customer's name, location and location code;
  (iii) the account number of the Transaction Card, disguised or suppressed as required by the Rules;
  (iv) transaction amount;
  (v) transaction date;
  (vi) a legend identifying the party to whom it will be delivered, e.g. member copy, merchant copy, cardholder copy, except as permitted by the Rules; and
  (vii) authorization code, if applicable.
The cardholder receipt must also disguise or suppress the expiration date of the Transaction Card as required by the Rules.

**7.3 Multiple Sales Drafts.** Customer shall include on any single transaction receipt the entire amount due for each transaction unless: (a) the balance of the amount is paid by the cardholder at the time of sale in cash, by check, by additional Transaction Cards, or by other means; or (b) all or a portion of the goods or services are to be delivered or performed at a later date, and the cardholder enters two or more transactions, one of which represents a deposit and the others of which represent payment of the balance and the transaction receipt for the balance is completed only upon delivery of the goods or performance of the services. In the case of delayed payment of the balance due on a transaction, Customer shall (i) note on the transaction receipt the words "balance" and (ii) not present the "balance" transaction receipt until all of the goods are delivered or the services performed.

**7.4 Returns.** Customer shall maintain a fair policy for the exchange and return of merchandise and for adjustment of services rendered and to give proper credit in such circumstances in accordance with the Rules. In such circumstances, Customer shall prepare and deliver to the Bank, WorldPay and the cardholder a properly completed credit voucher. Customer may limit its acceptance of returned merchandise, provided proper disclosure is made and purchased goods or services are delivered to the cardholder at the time of the transaction. Proper disclosure by Customer shall be determined to have been given by printing an appropriate notice (such as "NO REFUND" or "EXCHANGE ONLY") on all copies of the sales draft prior to obtaining the cardholder's signature thereon. Customer shall not make cash refunds to cardholders for transactions utilizing a Transaction Card.

**7.5 Obligation to Report Statement Discrepancies.** Customer shall be solely responsible for reviewing its statements from WorldPay (including statements provided online) and for reporting to WorldPay in writing, within 30 days of Customer's receipt (statements provided online shall be deemed received the first day they are available online) of any statement from WorldPay, any underpayments, overpayments or other discrepancies of any items reflected on such statements or related to the period covered by such statement, including, without limitation, discrepancies between the volume and/or value of transactions that Customer actually processed during the period indicated by the statement. Customer acknowledges and agrees that WorldPay and the Bank shall not be liable or otherwise responsible to Customer, and shall have no obligation to reimburse Customer, for any underpayment to Customer or other discrepancy that is not reported to WorldPay in writing within 30 days of Customer's receipt of the applicable statement. Customer acknowledges and agrees that it shall reimburse WorldPay and/or the Bank upon demand for any misdirected deposits, duplicate deposits or inadvertent over payments into any of its bank accounts hereunder, or at the Bank's or WorldPay's election, the Bank or WorldPay may deduct such amounts by ACH debit or other means from Customer's Deposit/Chargeback Account or Reserve Fund.

**7.6 Charges to Cardholders.** Customer shall not require any cardholder to pay any part of the Processing Charges, or to pay any contemporaneous finance charge in connection with a transaction in which a Transaction Card is used, unless permitted by the Rules. Customer must not request or use a Transaction Card account number for any purpose other than as payment for its good or services, except as otherwise permitted in the Rules.

**7.7 Fraud.** Customer shall be solely responsible for losses and expenses incurred by the Bank or WorldPay as a result of or arising out of the fraud, gross negligence or willful misconduct of Customer's employees, contractors, or agents.

**7.8 Change of Address.** Customer shall notify the Bank and WorldPay in writing at least 48 hours in advance of any change of address. The Bank and WorldPay shall be entitled to rely on Customer's address shown in this Agreement unless such address is updated in accordance herewith.

**7.9 Cardholders.** Customer shall not sell, purchase, provide or exchange information obtained by reason of an Authorized Card Transaction to any third party other than Customer's agents, the Bank, WorldPay, or Payment Networks, except as specifically required by law. Customer shall not make a cash disbursement to any cardholder (including Customer when acting as a cardholder) nor receive monies from a cardholder and subsequently prepare a credit to cardholder's account.

**7.10 Evidence of Authority.** Within five days after request by the Bank or WorldPay, Customer shall submit to the Bank or WorldPay a duly executed corporate or partnership resolution reflecting the authority of Customer to enter into this Agreement and the authority of the individual executing this Agreement on behalf of Customer to do so.

**7.11 Financial Information.** Customer shall provide such financial information as may be requested by WorldPay or the Bank from time to time during the term of this Agreement in order for WorldPay or the Bank to comply with the Rules of any Payment Network or to otherwise enable WorldPay and the Bank to assess the Customer's financial condition and the related risk associated with Customer's business. Such financial information may include copies of quarterly and annual financial statements, including, if available, audited statements.

**SECTION 8. CUSTOMER REPRESENTATIONS.**

**8.1** Customer hereby represents and warrants to WorldPay and the Bank that:
(a) It has full legal power and authority to enter into and perform its obligations under this Agreement and that such actions have been duly authorized by Customer;
(b) Its facsimile signature hereon constitutes a valid and binding Agreement;
(c) This Agreement constitutes the legal, valid and binding obligations of Customer, enforceable against Customer in accordance with its terms;
(d) The transactions transmitted to WorldPay for processing and to the Bank for settlement will represent the indebtedness of the cardholder in the amount set forth therein for goods sold or services rendered and shall not involve any element of credit for any other purpose;
(e) Customer shall not transmit Transaction Card information representing sales made by any individual or entity other than Customer;
(f) Customer represents that all of the disclosures in the Customer Processing Agreement or other information submitted to the Bank and WorldPay, including, without limitation, the processing assumptions contained on the Customer Processing Agreement, Customer's Internal Revenue Service Tax Identification Number (EIN or SSN) and the business name under which Customer files taxes are true, accurate and complete and do not omit any information necessary to make such disclosures not misleading to the Bank and WorldPay; and
(g) As to each transaction receipt delivered to the Bank, and as to the transaction evidenced thereby, the transaction receipt represents a bona fide sale or lease of goods or services or both, originated by Customer in compliance with this Agreement and the Rules; all transaction receipts are free from any alteration not authorized by the cardholder; the transaction is in compliance with all applicable laws, rules, and regulations; the indebtedness represented by the transaction receipt has not been pledged

as collateral for payment of any indebtedness or obligation of Customer or any other person; and Customer has no knowledge or notice of information that would lead it to believe that the enforceability or collectability of the subject transaction receipt, and the transaction evidenced thereby, is in any manner impaired.  If a claim or demand is received from a third party by WorldPay or the Bank, indicating that such third party is entitled to all or part of the funds payable by WorldPay or the Bank to Customer pursuant to this Agreement, and such claim includes documentation that appears to support such claim or demand in WorldPay's and Bank's commercially reasonable discretion, WorldPay or the Bank shall be entitled to hold (or interplead into a court of competent jurisdiction ) all such funds until the valid owner of the funds is determined, either by WorldPay and Bank (in their commercially reasonable discretion) or by a court of competent jurisdiction.  Neither WorldPay nor Bank shall be liable for any damages for taking any action in accordance with the foregoing sentence.

**8.2** **Credit Review Approval Required.**  Customer understands that the Customer Processing Agreement may be rejected or terminated by WorldPay or the Bank if Customer is not approved by the Bank's and WorldPay's credit and risk departments and that a consumer report of each of the officers, partners or owners of Customer may be requested from a consumer and/or credit reporting agency at the inception of this Agreement and from time to time thereafter.

**SECTION 9.  INDEMNIFICATION, DISCLAIMER, LIMITED LIABILITY.**

**9.1** **Indemnification.**  Customer shall indemnify and hold the Bank and WorldPay and their respective agents, officers, directors, employees, and affiliates harmless from and against any and all claims, demands, damages, judgments, fines, penalties, costs and expenses (including reasonable attorneys' fees) suffered or incurred by either of them arising out of any breach by Customer of the terms of this Agreement or arising from any act or omission by Customer which violates any applicable federal, state, local or other laws, rules or regulations or which violates any of the Rules. The Bank and/or WorldPay may defend any such claims or demands made against either of them or request Customer to take up such defenses.

**9.2** **Disclaimer of Warranties.**  THE PRODUCTS AND SERVICES SOLD HEREUNDER ARE SOLD "AS IS" AND "WHERE IS". OTHER THAN ANY THIRD PARTY MANUFACTURER'S OR THIRD PARTY SERVICE PROVIDER'S WARRANTIES WHICH MAY BE PASSED THROUGH TO CUSTOMER, IF ANY, WORLDPAY AND THE BANK MAKE NO REPRESENTATIONS OR WARRANTIES WHATSOEVER WITH RESPECT TO THE PRODUCTS AND SERVICES PROVIDED HEREUNDER AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, ARE SPECIFICALLY EXCLUDED, INCLUDING BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, AND ANY WARRANTY ARISING BY STATUTE, OPERATION OF LAW, COURSE OF DEALING, PERFORMANCE, USAGE OR TRADE.

**9.3** **Limitation of Liability.**  UNDER NO CIRCUMSTANCES SHALL THE AGGREGATE FINANCIAL RESPONSIBILITY OF WORLDPAY AND THE BANK FOR ANY FAILURE OF PERFORMANCE BY WORLDPAY OR THE BANK UNDER THIS AGREEMENT EXCEED THE FEES OR CHARGES PAID TO WORLDPAY BY CUSTOMER FOR THE TRANSACTION OR ACTIVITY THAT IS OR WAS THE SUBJECT OF THE ALLEGED FAILURE OF PERFORMANCE AND IN ANY EVENT, SUCH FINANCIAL RESPONSIBILITY SHALL NOT EXCEED THE AGGREGATE AMOUNT OF FEES AND CHARGES PAID TO WORLDPAY PURSUANT TO THIS AGREEMENT IN THE THREE MONTH PERIOD PRECEDING THE EVENT THAT GAVE RISE TO THE CLAIM OF LIABILITY.  FOR PURPOSES OF THIS SECTION 9.3, FEES OR CHARGES OF THE PAYMENT NETWORKS OR OTHER THIRD PARTIES PASSED THROUGH TO CUSTOMER PURSUANT TO THIS AGREEMENT SHALL NOT BE INCLUDED IN THE CALCULATION OF FEES AND CHARGES PAID TO WORLDPAY.  IN NO EVENT SHALL THE BANK, WORLDPAY, OR THEIR RESPECTIVE AGENTS, OFFICERS, DIRECTORS, EMPLOYEES OR AFFILIATES, BE LIABLE FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, OR EXEMPLARY DAMAGES OR CLAIMS BY CUSTOMER OR ANY THIRD PARTY RELATIVE TO THE TRANSACTIONS OR ACTIVITIES HEREUNDER, WHETHER OR NOT SUCH DAMAGES WERE FORESEEABLE OR SUCH PERSON HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**SECTION 10.  TERM, TERMINATION.**

**10.1** **Term.**  This Agreement shall be binding upon Customer upon the earlier of (a) the date upon which the first transaction is processed by WorldPay or the Bank for Customer pursuant to this Agreement, or (b) the execution of this Agreement by Customer, and shall be binding upon WorldPay and the Bank upon processing and settlement of such first transaction.  This Agreement shall continue in effect for the number of years noted on the Customer Processing Agreement, beginning as of the date on which Customer's first draft is presented to WorldPay and the Bank pursuant to this Agreement.  Such term shall automatically renew for successive one year periods at the end of the original and each renewal term, unless either (i) Customer elects to terminate as of the expiration of the then current term by giving written notice of non-renewal to WorldPay and the Bank at least 90 days before the expiration of the then current term, or (ii) WorldPay or the Bank elect to terminate by giving written notice to Customer before the expiration of the then current term.  To the extent, as an accommodation to Customer, WorldPay or the Bank continue to provide Customer with processing and/or settlement services pursuant to this Agreement after the effective date of any termination of this Agreement, the terms of this Agreement shall continue to apply to such transactions.

**10.2** **Termination Without Notice.**  WorldPay or the Bank may terminate this Agreement without notice, at any time as a result of any of the following events: (a) any noncompliance by Customer with this Agreement or the Rules; (b) any voluntary or involuntary bankruptcy or insolvency proceedings involving Customer, its parent or an affiliated entity or individual; (c) WorldPay or the Bank deems Customer to be financially insecure; (d) Customer or any other person owning or controlling Customer (or its business) is or becomes listed in the Combined Terminated Customer File (or its equivalent) maintained by the Payment Networks or Customer is listed on the Questionable Merchant Report of MasterCard; (e) Customer materially alters the nature and type of business it conducts, or (f) WorldPay or the Bank is prohibited by applicable law or the Payment Networks from conducting business with Customer or its principals. In the event of Customer's bankruptcy, insolvency or other suspension of business operations, Customer shall not, except pursuant to court order or other requirement under applicable law, sell, transfer or disclose any materials that contain cardholder data to third parties, and Customer shall either immediately return the cardholder data to WorldPay and the Bank or provide acceptable proof to WorldPay and the Bank that the cardholder data has been properly destroyed.

**10.3** **Termination With Notice; Early Termination.**  In the event WorldPay or the Bank breaches any of the provisions hereof and fails to cure such breach within 30 days of receipt of written notice from Customer specifying such breach, Customer may terminate this Agreement immediately at the expiration of the 30 day cure period.  If, prior to the end of the initial term,  (a) Customer terminates this Agreement without cause, or (b) WorldPay or the Bank terminates this Agreement pursuant to Section 10.2, or (c) Customer sells all or substantially all of its assets and this Agreement is not assigned to and assumed by the acquirer of such assets (collectively, an "<u>Early Termination</u>"), then in addition to all other obligations and responsibilities hereunder, Customer shall pay to WorldPay the amount that WorldPay reasonably would have received pursuant to this Agreement had such Early Termination not occurred.  For purposes hereof, the parties agree that the amount that WorldPay reasonably would have received had such Early Termination not occurred is equal to (i) the greater of (A) the Monthly Minimum Fee shown on the Customer Processing Agreement or (B) the average monthly amount of Processing Charges (exclusive of Payment Network fees and based on the most recent three calendar month period during which Customer was processing in compliance with this Agreement), in each case, multiplied by (ii) the number of months remaining in the initial term at the time of termination. If, prior to the end of the initial term, Customer removes or fails to process with WorldPay and the Bank transactions that are conducted at any location of Customer (as required by Section 11.1 of this Agreement), then WorldPay may elect to keep this Agreement in place but Customer shall pay to WorldPay the applicable Early Termination fee for each such location.  The parties agree that the damages that would be incurred by WorldPay as a result of any Early Termination are difficult to calculate, and the early termination fee described above is intended as a reasonable approximation of such damages and not as a penalty.  Such termination fee may be off set against amounts otherwise due to Customer hereunder or may be deducted (by ACH debit or other electronic means) from the Deposit/Chargeback Account or Reserve Fund by the Bank and WorldPay.  Payment of any termination fee hereunder shall be WorldPay's and the Bank's sole remedy with respect to such Early Termination of the Agreement or a location, as applicable, provided the foregoing shall not be deemed to waive the Bank's or WorldPay's (i) rights to payment of any Processing Charges, Chargebacks, or other amounts payable hereunder that pertain to the period during which WorldPay and the Bank processed or settled transactions for Customer under this Agreement, (ii) rights or remedies with respect to any violation of this Agreement by Customer other than the breach associated with the Early Termination, or (iii) rights under Section 5.4 to

15101v4                                                                                           5

the extent Customer continues to process with WorldPay and Bank with respect to some, but not all, of its locations and the anticipated volume associated therewith is materially different than the anticipated volume shown on this Agreement. Customer's obligation to pay such early termination fee shall survive any termination of this Agreement.

**10.4    Additional Rights.**  Upon any termination of this Agreement, the Bank shall determine and the Bank, or WorldPay on behalf of the Bank, may notify Customer of the estimated aggregate dollar amount of Customer's Chargebacks, refunds, and other obligations and liabilities that the Bank and WorldPay reasonably anticipate may become due subsequent to termination (the "<u>Estimated Exposure Amount</u>"), and Customer shall immediately establish, replenish, or increase a Reserve Fund to the Estimated Exposure Amount by depositing the necessary amount with the Bank, or the Bank, at the Bank's option, may withhold such necessary amounts from credits due to Customer, may debit the Customer's Deposit/Chargeback Account for such necessary amounts, or may utilize the funds in any existing Reserve Fund, if applicable. The Bank is authorized to hold such funds for a reasonable period not to exceed the later of ten months after termination of this Agreement or the length of time applicable laws, rules or regulations or the Payment Networks impose actual or potential liability upon any party to this Agreement. Customer shall have no rights to such funds until all of its obligations under this Agreement are satisfied, and WorldPay and the Bank may receive out of such funds those amounts that are or become due to WorldPay and the Bank pursuant to this Agreement.

**10.5    Survival.** The obligations of all parties hereto incurred prior to the effective date of termination or arising from transactions processed prior to the termination shall survive the termination of this Agreement.  Without limiting the generality of the foregoing, Customer shall be liable both before and after termination for all Chargebacks, Processing Charges, and other amounts payable pursuant to this Agreement relating to card transactions processed or settled prior to such termination and for all obligations, warranties and liabilities of Customer pertaining to the period during which WorldPay and the Bank processed or settled transactions for Customer under this Agreement, including all indemnification obligations under Sections 2, 6.5, and 9.1, regardless of whether Customer has paid an early termination fee under Section 10.3.  In addition to the foregoing, and in addition to those sections of this Agreement which by their terms survive, Sections 4.4, 4.7, 4.8, 6.6, 6.7, 7.4, 7.5, 7.7, 9.2, 9.3, 10.4, 10.5, and 11.2 through 11.11 shall survive any termination or expiration of this Agreement.

## SECTION 11. GENERAL PROVISIONS.

**11.1    Exclusivity.** Customer agrees that throughout the term of this Agreement, it will not use the services of any bank, corporation, entity or person other than WorldPay and the Bank to provide services similar to those contemplated in this Agreement.

**11.2    Assignment; Binding; No Third Party Beneficiaries.** Customer may not assign this Agreement, directly or indirectly, including by operation of law, without the prior written consent of the other parties.  Any sale or transfer of the equity interests of Customer such that the holders of the equity interests as of the date hereof do not own more than 50% of the equity interests of Customer immediately after such transfer shall be deemed an assignment of this Agreement.  The Bank may assign this Agreement without Customer's consent. WorldPay may assign its rights and obligations under this agreement to another transaction processor approved by the Bank.  This Agreement shall be binding upon and inure to the benefit of the parties hereto, their successors or permitted assigns.  This Agreement will not confer any rights or remedies upon any person or entity other than the Bank, WorldPay, and Customer.

**11.3    Governing Law; Venue.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia without giving effect to any choice or conflict of law provision or rule (whether of the State of Georgia or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Georgia.  In connection with any dispute relating to this Agreement, Customer and all individuals executing this Agreement in any capacity hereby consent to the exclusive jurisdiction of, and venue in, the courts in Atlanta, Georgia or Fulton County, Georgia.

**11.4    Attorneys' Fees.** In the event the Bank or WorldPay shall employ legal counsel or bring an action at law or other proceeding against Customer to enforce any of the terms, covenants, or conditions hereof, Customer shall pay to the Bank and/or WorldPay its reasonable attorneys' fees and costs so incurred.

**11.5    Maintenance of Records by Electronic Means.**  Customer understands and acknowledges that WorldPay and the Bank, in the ordinary course of their regularly conducted business activities, may keep or maintain certain of its business records and documentation by scanning such records and documents so as to create a photographic or other image or representation of same that may be stored by electronic means and, if necessary, subsequently reproduced in paper form.  Customer hereby waives any objection to WorldPay's and the Bank's maintenance and/or reproduction of such records and documents in this manner, and Customer further agrees that it shall not challenge or contest the authenticity or admissibility of same on such grounds in any legal action or proceeding.

**11.6    Notices.** Except as otherwise provided in this Agreement, written notices required under the terms of this Agreement shall be sent by (a) Priority U.S. mail, return receipt requested, (b) personal delivery including Federal Express, DHL, UPS, or other reputable express courier services, or (c) facsimile, provided written confirmation of receipt is received, return receipt requested and a copy is sent by either the method described in (a) or (b).  Notices shall be addressed to the Bank at RBS Citizens, N.A., 1 Citizens Plaza, Providence, Rhode Island 02903, Attention: Senior Counsel, Business Services Legal; to WorldPay at WorldPay US, Inc., 600 Morgan Falls Road, Atlanta, Georgia, 30350, Attention: Legal Department, Fax 678-587-2244; and to Customer at its address shown in the Customer Processing Agreement; or such other address as shall be provided by the Bank, WorldPay or Customer in writing, to the other.  Except as otherwise provided in this Agreement, notices shall be effective upon actual receipt. Notwithstanding the foregoing, Customer agrees that notices sent in the following manner shall also be deemed to constitute written notice under the terms of this Agreement: (i) if Customer receives written statements, notices may be sent to the address provided by Customer for the receipt of statements and may be included with such statements, and (ii) if Customer receives electronic statements via the online account that WorldPay provides to Customer, notices may be sent by making such notice available at such online account, and in each of the foregoing instances, notices shall be effective when sent.

**11.7    Confidentiality.**  Customer acknowledges that each of WorldPay's and the Bank's businesses is highly competitive and that its respective books, records and documents, its technical information concerning its products, equipment, services and processes, procurement procedures and pricing techniques, the names or other information (such as credit and financial data) concerning the cardholders, WorldPay and the Bank, all comprise confidential business information and trade secrets of WorldPay and the Bank which are valuable, special and unique assets of WorldPay and the Bank, which each uses in its business to obtain a competitive advantage over its competitors, which do not know or use this information, or have access to it (collectively, "<u>Protected Information</u>").  Customer further acknowledges the protection of WorldPay's and the Bank's Protected Information against unauthorized disclosure and use is of critical importance to WorldPay and the Bank in maintaining its competitive position. Accordingly, Customer hereby agrees that neither it, nor any of Customer's employees or agents, will make any unauthorized disclosure of any Protected information, or make any use thereof, except for the benefit of, and on behalf of, WorldPay and the Bank in accordance with this Agreement.  All Protected Information received by Customer and/or Customer's employees or agents from WorldPay or the Bank shall be treated as confidential and only those disclosures as may be necessary in accordance with this Agreement may be made and then only to the extent necessary.  The provisions of this Section 11.7 shall be effective during the term of this Agreement and for a period of two years thereafter, provided with respect to Protected Information that constitutes a trade secret under applicable law, the provisions of this Section 11.7 shall continue in effect for the longer of (i) two years after the termination of the Agreement, or (ii) for so long as such information continues to qualify as a trade secret under applicable law, excluding failure to so qualify as a result of breach of this Agreement.  Notwithstanding anything contained to the contrary herein, the parties further agree that all cardholder data shall be protected in accordance with applicable law and the Rules.

**11.8    Force Majeure.** WorldPay and the Bank shall not be liable for delays in authorization, processing, settlement, or other non-performance caused by such events as fires, telecommunications or utility or power failures, equipment failures, labor strife, riots, war, non-performance of WorldPay or the Bank's vendors or suppliers, acts of God, or other causes over which WorldPay and the Bank have no reasonable control.

**11.9    Entire Agreement; Modification, Waiver; Section References**. This Agreement, and any accompanying schedules or addendums, constitute the entire understanding of WorldPay, the Bank and Customer with respect to the subject matter hereof and supersedes all prior agreements, understandings or negotiations, whether oral or written between them with respect to the subject matter hereof.  No waiver by any party of any provision of this Agreement will be valid

unless the same will be in writing and signed by the party making such waiver.  No WorldPay sales representative is authorized to make any change to these Terms and Conditions.  No waiver of a provision of this Agreement shall constitute a waiver of any other provision or of the same provision on another occasion.  WorldPay and the Bank shall have the right to modify the terms and conditions of this Agreement, which right shall include, without limitation, the ability to modify, amend, or supplement the fees set forth on the Customer Processing Agreement, by providing notice thereof to Customer (the "Change Notice").  Such modifications, amendments, or supplements shall become effective upon the date stated in the Change Notice, provided the date shall not be fewer than 15 days after the date of the Change Notice, unless the notice relates to a change in the Rules made by the Payment Network, a change in the fees charged by the Payment Networks, or a change in applicable laws, rules or regulations (collectively, a "Third Party Change"), in which case the modification, amendment or supplement shall be effective upon the earlier of the date stated in the Change Notice or upon the date the Third Party Change is or was implemented by the Payment Network or applicable governing authority.  In the event of any modification of this Agreement by WorldPay or the Bank as contemplated in this Section 11.9, Customer shall have the right to terminate this Agreement, without the payment of any early termination fee otherwise payable pursuant to Section 10.3, by providing written notice thereof to WorldPay and the Bank, provided such notice must be given within 15 days following the date of the Change Notice, and provided further, no such right to terminate shall apply in the event the modification relates to a Third Party Change. Unless otherwise specified, a reference in this Agreement to a section means a section of this Agreement.

**11.10** **Severability.**  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction will not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

**11.11** **Marks.**  From time to time, WorldPay may provide Customer with materials that include WorldPay's name, logo, trademarks and/or service marks ("Marks").  Customer shall only use such materials and Marks in accordance with guidelines and other instructions that WorldPay provides to Customer from time to time.  Upon the termination or expiration of this Agreement, or at any such earlier time as WorldPay may request, Customer will cease using such materials and Marks and will, as directed by WorldPay, return to WorldPay or destroy all materials containing the Marks.